UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

BEVERAGE WAREHOUSE, INC., ET AL.                                    *Plaintiffs*

v.                                                      Civil Action No. 3:17-cv-247-RGJ

CENTRAL STATION (KY), LLC, ET AL.                                  Defendants

* * * * *

## MEMORANDUM OPINION AND ORDER

Plaintiffs Beverage Warehouse, Inc. and Gregory Anastas brought this action against Defendants Central Station (KY), LLC, ("Central Station") and The Kroger Company ("Kroger") seeking relief for violations of state law. [DE 1-1, Compl.]. Defendants removed the case to this Court on diversity of citizenship jurisdiction. [DE 1]. Beverage Warehouse moved for a permanent injunction. [DE 20]. Timely responses and replies were filed. [DE 27; DE 28]. Defendants then moved for Summary Judgment. [DE 26]. Plaintiffs responded [DE 29], and Defendants replied [DE 31]. These matters are ripe for judgment. For the reasons below, the Court **DENIES** Plaintiffs' Motion for Permanent Injunction [DE 20]; and **GRANTS** Defendants' Motion for Summary Judgment [DE 26].

## BACKGROUND

In 2006, Beverage Warehouse entered a lease agreement ("Retail Lease Agreement") with Central Retail, LLC for retail space in a Louisville, Kentucky shopping center ("Shopping Center"). Defendant Central Station is the successor in interest to Central Retail. [DE 1-1 at ¶¶ 6–7]. Under the lease, Beverage Warehouse has a right to use the retail space to sell packaged liquor. *Id.* at ¶ 8. The Retail Lease Agreement also includes a restrictive covenant barring Central Station from leasing other portions of the Shopping Center to tenants whose primary business is

1

the sale of packaged liquor, except for tenants existing at the time of execution of the Retail Lease Agreement. *Id.* at ¶ 9.

The Retail Lease Agreement also includes a provision for common area maintenance ("CAM") fees. [DE 26-1 at 528]. It states that Central Station would "proportionately allocate all Common Area Maintenance between the Anchor [Kroger] and Minor Tenants [Beverage Warehouse] based on leasable square feet." *Id.* (quoting DE 26-8 at 5). At some point after execution of the lease, Central Station "indicated to Beverage Warehouse that its share of the common area maintenance was going to increase because the unimproved [space in the Shopping Center] was no longer going to be improved and/or leased, thus lowering the total square footage of the shopping center and increasing each tenant's respective share of the CAM." [DE 1-1 at ¶ 11]. Beverage Warehouse paid the additional CAM charges based on Central Station's representations. *Id.*

In early 2017, Beverage Warehouse discovered that Kroger intended to build and operate a Wine and Spirits Shop in the Shopping Center. *Id.* at ¶ 12. Shortly thereafter, Beverage Warehouse notified Central Station and Kroger that this action would violate the restrictive covenant of the Retail Lease Agreement. *Id.* at ¶ 13. In response, Central Station acknowledged that Kroger intended to build the Wine and Spirits Shop and claimed that the shop would not violate the terms of Beverage Warehouse's lease. *Id.*

Beverage Warehouse filed a Complaint against Kroger and Central Station alleging breach of contract, misrepresentation, and tortious interference with contractual interests. [DE 1-1]. Defendants removed the case to federal court on diversity of citizenship jurisdiction [DE 1], Beverage Warehouse moved to enjoin Kroger permanently from opening its Wine and Spirits Shop. [DE 20]. Defendants then moved for Summary Judgment. [DE 26].

**DISCUSSION**

**A. Motion for Permanent Injunction [DE 20]**

**I.      Legal Standard**

Beverage Warehouse seeks to permanently enjoin Kroger from operating the Wine and Spirits Shop within the Shopping Center. [DE 20-1 at 141]. A permanent injunction is "an extraordinary remedy and will not be granted except upon a clear showing of an existing equitable right." *Oscar v. Ewing, Inc. v. Melton*, 309 S.W.2d 760, 761 (Ky. 1958). While Kentucky case law on permanent injunctions is scarce, courts have established that a plaintiff is entitled to a temporary injunction if (1) there is a substantial probability that the movant will ultimately prevail on the merits of the case; (2) the movant's remedy will be irreparably impaired without the extraordinary relief; and (3) that an injunction will not be inequitable, *i.e.,* will not unduly harm other parties or disserve the public. *Price v. Paintsville Tourism Comm'n*, 261 S.W.3d 482, 484 (Ky. 2008). The United States Supreme Court has noted that the "the standard for a preliminary injunction is essentially the same as for a permanent injunction." *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987). But while a temporary injunction requires that the plaintiff "show a likelihood of success on the merits," a plaintiff seeking a permanent injunction must show that they will succeed on the merits of their case. *Am. Civil Liberties Union of Ky. v. McCreary Cty.*, 607 F.3d 439, 445 (6th Cir. 2010). The plaintiff bears a higher burden because a permanent injunction "is necessarily granted by a final judgement which ultimately disposes of the action." *Permanent Injunctions*, 5 Ky. Prac. Methods of Prac. § 40:4; *see also* Ky. R. Civ. P. 65.01.

Here, Beverage Warehouse seeks "a dipositive determination on the contractual dispute as well as the relief of permanent injunction." [DE 28 at 742]. The Kentucky Supreme Court has cautioned that "a permanent injunction should be granted by means of summary judgment only in

those cases where the showing [of an existing equitable right] is very clear and convincing." *LaVielle v. Seay*, 412 S.W.2d 587, 591 (Ky. 1966).

## II.     Actual Success on the Merits

Beverage Warehouse has the burden to prove that Central Station will violate the restrictive covenant of the Retail Lease Agreement by allowing Kroger to open its Wine and Spirits Shop. As Beverage Warehouse cannot show a violation of its contractual rights, its request for a permanent injunction must be denied.

The issue here involves the restrictive covenant of the Retail Lease Agreement which bars Central Station from allowing a new tenant to open a business primarily for the sale of packaged liquor. "For purposes of diversity jurisdiction, a federal court is in effect another court of the forum state, in this case Kentucky, and must therefore apply the substantive law of that state." *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003).   Beverage Warehouse's Retail Lease Agreement also specifies the governing law as the law of Kentucky. [DE 26-8 at 645]. Kentucky courts hold that "in the absence of ambiguity a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Wehr Constructors, Inc. v. Assurance Co.*, 384 S.W.3d 680, 687 (Ky. 2012) (internal citation and quotations omitted). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Id.* (quoting *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010)). If no ambiguity exists, the parties are bound by the clear meaning of the language used. *Hensley v. Gadd*, 560 S.W.3d 516, 521 (Ky. 2018). Restrictive covenants are also "to be construed according to their plain language," *Id.*, "and the old-time doctrine of strict construction no longer applies," *Triple Crown Subdivision Homeowners Ass'n v. Oberst*, 279 S.W.3d 138, 140 (Ky. 2008).

The restrictive covenant at issue states:

> So long as Lessee continues to operate in the Premises in accordance with the Permitted Use, as stated in Article 1.01(I), and Lessee is not in default of any term contained in this Lease, Lessor agrees that during the Term of the Lease, it will not lease any premises within the Center to a tenant whose primary business is the sale of packaged liquor. Notwithstanding anything contained herein to the contrary, Tenant's exclusion shall not apply to any tenant within the Center existing prior to the date of execution of this Lease, including any renewal options that such tenants may have under their existing lease agreements, however, no such existing tenant shall be granted any new use rights in a new lease agreement permitting them to operate a business at the Center in violation of this exclusion.

[DE 26-8 at 9].

This provision is unambiguous, therefore, the plain language controls. *See GMK Props., LLC v. Developers Diversified Realty Corp.*, No. A-4656-10T1, 2012 WL 489160 (N.J. Super. Ct. App. Div. Feb. 16, 2012) (holding "the plain language of the restrictive covenant's exclusionary clause" did not bar grocery store from operating an on-site liquor store). Central Station agreed that it would not lease any premises within the Shopping Center to a tenant whose primary business is the sale of packaged liquor. Kroger's Wine and Spirits Shop does not fall within the bounds of this restrictive covenant because the Wine and Spirits Shop and Kroger constitute a single tenant, and taken together, the entity's primary business is not the sale of packaged liquor. Although Kroger must physically separate its Wine and Spirts Shop from its grocery store under Kentucky law, KRS 243.230(5), the shop and the grocery store remain operationally tied—they comprise one business, owned by one entity, Kroger Limited Partnership I. [DE 26-1 at 537–38; DE 31 at 791–92]. Kroger did not enter into a separate lease agreement with Central Station to secure the retail space for the Wine and Spirits Shop, rather it merely amended its original lease ("Ground Lease Agreement") to include its new wine and spirits department. The Wine and Spirit Shop is analogous to the Kroger fuel station also located in the Shopping Center. [DE 26-1 at 526]. Although the fuel station is physically separate from the grocery store, and is engaged in the sale

of gasoline, not groceries, the fuel station constitutes a part of Kroger's business in the Shopping Center. It follows that the Wine and Spirits Shop is also a part of Kroger's business at the Shopping Center and taken together, the Wine and Spirits Shop and Kroger form a single tenant under the Ground Lease Agreement.

It is also undisputed that Kroger's primary business, both at the Shopping Center and nationwide, is the sale of groceries. [DE 26-1 at 531; DE 29 at 769]. The general nature of Kroger's business will not change despite adding the Wine and Spirits Shop. The Wine and Spirits Shop will physically occupy 2,094 square-feet of Kroger's 95,913 square-foot space. [DE 26-1 at 530, 535]. And the shop is projected to generate merely 1% of Kroger's weekly revenue. *Id.* at 535. Thus, Central Station would not violate the restrictive covenant of the Retail Lease Agreement by allowing Kroger to open the Wine and Spirits Shop because Kroger is not a tenant whose primary business is the sale of packaged liquor.

Even if Beverage Warehouse could establish that Kroger's primary business is the sale of packaged liquor, the restrictive covenant would still not bar Kroger from opening the Wine and Spirits Shop. The restrictive covenant states that it does not apply to any tenant within the Shopping Center existing before execution of the Retail Lease Agreement, including any renewal options, if the existing tenant is not granted any new use rights allowing it to operate a business for the sale of packaged liquor. Kroger qualifies as a pre-existing tenant because it entered into the Ground Lease Agreement with Central Station in 2003, *Id.* at 526, almost three years before the execution of the Retail Lease Agreement, *Id.* at 527. Additionally, Kroger never entered into a new lease agreement with Central Station after the restrictive covenant took effect. Although Kroger amended its lease three times, each amendment relied on and adopted the terms of the original Ground Lease Agreement. [DE 26-1 at 540; DE 31 at 794]. Kroger was never granted new use

rights to open the Wine and Spirits Shop. [DE 26-1 at 540]. Under its original lease, Kroger enjoyed broad use rights, including any lawful retail purpose, excluding non-retail businesses requiring extensive parking or those related to sexually explicit or drug-related products. *Id.* at 527. In fact, pursuant the Ground Lease Agreement, Kroger could have sold packaged liquor at any point during its tenancy. *Id.* at 537; s*ee also Big Chief Eatin' Post No. 19, Inc. v. Newport Shopping Ctr.*, 467 S.W.2d 591, 593 (Ky. Ct. App. 1972) ("The covenant protected Big Chief only against action not allowed by current leases, not against allowable action that a lessee simply had not yet chosen to take."). None of the later amendments to the Ground Lease Agreement altered Kroger's use rights. [DE 26-1 at 540]. Since Kroger was an existing tenant when the Retail Lease Agreement was executed, and it never entered into a new lease agreement with Central Station to secure new use rights to allow it to operate a business for the sale of packaged liquor, Kroger falls within the pre-existing tenant exception of the restrictive covenant. Thus, Central Station would not violate the Retail Lease Agreement by allowing Kroger to open the Wine and Spirits Shop.

Beverage Warehouse has failed to prove that Central Station would violate the Retail Lease Agreement by allowing Kroger to open the Wine and Spirits Shop. Since Beverage Warehouse cannot establish that it would succeed on the merits of its case, it has no right to a permanent injunction to enjoin Kroger from opening the shop. As a result, the Court will not discuss the remaining factors necessary for granting a permanent injunction.

**B.     Motion for Summary Judgment [DE 26]**

Central Station and Kroger moved for Summary Judgment seeking a judgment as a matter of law on Beverage Warehouse's breach of contract, misrepresentation, and tortious interference claims. [DE 26]. Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion." *Bell v. City of E. Cleveland*, 125 F.3d 855 (6th Cir. 1997) (citing *Liberty Lobby*, 477 U.S. at 252).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008). The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" *Shreve v. Franklin Cty.*, 743 F.3d 126, 136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

## I.    Breach of Contract

Beverage Warehouse claims Central Station breached the Retail Lease Agreement by allowing Kroger to construct a store primarily to sell packaged liquor in the Shopping Center. [DE 1-1 at ₽ 23]. Defendants argue they are entitled to summary judgement on Beverage Warehouse's

claim given the plain language of the Retail Lease Agreement. [DE 26-1 at 531]. The Court agrees. As discussed above, Central Station is not barred by the restrictive covenant from allowing Kroger to open the Wine and Spirits Shop because the stores comprise a single tenant, whose primary business is not the sale of packaged liquor. Alternatively, Kroger is entitled to the pre-existing tenant exception described in the restrictive covenant, because it was not granted new use rights in a new lease to open the Wine and Spirits Shop. Defendants therefore are entitled to a judgment as a matter of law on Beverage Warehouse's breach of contract claim.

## II. Misrepresentation

Beverage Warehouse claims Central Station made a material misrepresentation that the unimproved space in the Shopping Center was not going to be improved or leased to induce Beverage Warehouse to pay additional CAM fees throughout the duration of the Retail Lease Agreement. [DE 1-1 ¶¶ 40–44]. To recover for fraudulent misrepresentation in Kentucky, a plaintiff must prove a "a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury." *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999). To be actionable, the representation "must relate to a past or present material fact." *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky.2009). "A mere statement of opinion or prediction may not be the basis of an action." *Id.* (quoting *McHargue v. Fayette Coal & Feed Co.*, 283 S.W.2d 170 (Ky. 1955)). For example, "forward-looking opinions about investment prospects or future sales performance" cannot serve as the basis for a fraudulent misrepresentation claim. *Id.* That said, Kentucky courts have recognized two "deception" exceptions to this general rule. *Id.*; *see also Yung v. Grant Thornton*, LLP, 563 S.W.3d 22, 46 (Ky. 2018). A statement may support a misrepresentation claim "where the opinion either incorporates falsified past or present facts or is so contrary to the true current state of affairs that the purported prediction is an obvious shame." *Flegles*, 289 S.W.3d at

9

549. A statement merely "misguided, impudent or overly optimistic" does not fall within the deception exceptions. *Id.* (internal quotations and citations omitted).

Central Station informed Beverage Warehouse that the improved space in the Shopping Center was not going to be improved and/or leased. [DE 1-1 at ₽ 40]. Beverage Warehouse claims this representation was false given that in 2017, Kroger leased and improved the previously undeveloped space. That said, the representation is not actionable under Kentucky law because it did not relate to a past or present material fact. Rather, Central Station merely stated its forward-looking prediction that the space would not be leased or improved, and therefore each tenant's share of CAM would increase, as permitted by the Retail Lease Agreement. [DE 26-1 at 529; DE 26-8 at 4].

Furthermore, this statement does not fall within the deception exceptions given that it did not incorporate falsified information nor was it so contrary to the current state of affairs as to render it an obvious sham. In fact, the statement appears to accurately represent the state of Central Station's business when the representation was made. The evidence reveals that Central Station actively marketed the unimproved space for years through the internet, at real estate conventions, and by going door-to-door. [DE 26-1 at 529; DE 26-9 at 1–2]. Based on Central Station's many failed attempts to secure a tenant for the unimproved retail space, the representation that the unimproved space would not be improved or leased is reasonable, not falsified information or an obvious shame. Thus, Central Station's statement is not actionable under Kentucky law, and Defendants are entitled to a judgment as a matter of law on Beverage Warehouse's misrepresentation claim.

### III. Intentional Interference

Beverage Warehouse claims that Kroger tortuously interfered with the Retail Lease Agreement by constructing the Wine and Spirits Shop, despite receiving notice that this action violated Beverage Warehouse's lease. [DE 1-1 ¶¶ 50–54]. To prevail on a tortious interference with contract claim, the plaintiff must show "(1) the existence of a contract; (2) [defendant's] knowledge of the contract; (3) that [defendant] intended to cause a breach of that contract; (4) that [defendant's] actions did indeed cause a breach; (5) that damages resulted to [plaintiff]; and (6) that [defendant] had no privilege or justification to excuse its conduct." *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 5–6 (Ky. Ct. App. 2012). As discussed, Central Station did not violate the Retail Lease Agreement by allowing Kroger to construct the Wine and Spirits Shop. Thus, Kroger fails to satisfy the "indeed cause a breach" of contract element of the tortious interference claim. Beverage Warehouse cannot prevail, and Defendants are entitled to judgment as a matter of law.

### CONCLUSION

Having thus considered the parties' filing and the applicable law, and being otherwise sufficiently advised, the Court **HEREBY ORDERS AS FOLLOWS:**

1. Plaintiff's Motion for Permanent Injunction [DE 20] is **DENIED;**

2. Defendant's Motion for Summary Judgment [DE 26] is **GRANTED.**

CC: Counsel of record.